CITY OF AKRON, APPELLANTS, *v.* HARDGROVE ENTERPRISES, INC., ET AL., APPELLEES.

[Cite as Akron v. Hardgrove Enterprises, Inc. (1973), 47 Ohio App. 2d 196.]

(No. 7202—Decided November 7, 1973.)

*Mr. William R. Baird,* director of law, and *Mr. Henry A. Tipping,* for appellant.

*Mr. Dan J. Cavanaugh,* for appellee Hardgrove Enterprises, Inc.

MAHONEY, J. The city of Akron commenced an action in the Court of Common Pleas of Summit County to appropriate, for urban renewal purposes, a building and lot known as 760-762-764 South Main Street, in the city of Akron. The real estate consists of three first floor separate storerooms, with full basements underneath, and with private apartments and professional offices over the storerooms.

The condemned property was owned by Hardgrove Enterprises, Inc., a small family corporation, whose officers and sole shareholders are Robert and William Hardgrove—father and son, respectively. The corporation leased the storerooms and basements to the Akron Novelty and Mer-

chandise Company, a sole proprietorship of the father, and in which both father and son were employed.

The trial court permitted William Hardgrove to act as trial attorney for the property owner, although he was, admittedly, not licensed to practice law. A licensed attorney (Hardgrove's present counsel) sat at the trial table but did not participate in the trial.

The date of the "take" was stipulated as March 9, 1973.

Upon trial, the jury awarded the property owner the sum of $65,000 as compensation.

The city of Akron has appealed that verdict, setting forth the following assignments of error:

"1. The trial court erred by admitting in evidence alleged comparable sale properties offered by the Hardgrove corporation for which no proper foundation had been laid.

"2. The trial court erred by admitting in evidence a photograph of the subject property depicting its condition a substantial period prior to the date of take.

"3. The trial court erred by admitting in evidence a lease between the property owner and the tenant business owned and operated by the officers of said corporation which contained self-serving rental value and an apparent uncompensated leasehold interest.

"4. The verdict rendered by the jury was contrary to the weight of the legally admissible evidence."

We have examined the record and find the following errors:

1. The trial court admitted in evidence a photograph (circa 1955) of the front of the building. This photograph had no bearing or relevancy to the condition of the building at the date of "take" or to any other issue in the case. Its admission *per se* was innocuous. (*Bekos* v. *Masheter* [1968], 15 Ohio St. 2d 15.)

2. The trial court admitted in evidence the lease from "Hardgrove" to "Akron Novelty" (Property Owner's Exhibit B). Ordinarily, rentals that are received are proper evidence to be used in determining the fair market value of income producing property, but those rents should be

as the result of an "arm's length transaction," and not one negotiated by interrelated parties, as in this case. Even so, the oral testimony was probably rendered admissible by the statement, on cross-examination, of the city's expert, James Nobil, who said that $500 a month was a fair rental.

However, it was error to admit the lease itself, since it did permit the jury to consider its terms and conditions and, perhaps, even speculate on the value of the remaining leasehold interests and include it in their compensation award. Such an issue was not before the jury. (See, *Pokorny* v. *Local 310*, 35 Ohio App. 2d 178; *Cincinnati* v. *Spangenberg*, 35 Ohio App. 2d 168; *Bd. of County Commrs.* v. *Thormyer*, 169 Ohio St. 291; *Queen City Realty Co.* v. *Linzell*, 166 Ohio St. 249; and *Sowers* v. *Schaeffer*, 155 Ohio St. 454.)

3. The trial court permitted Robert Hardgrove to testify as an expert and give his opinion on the fair market value of the subject property. The court considered him an owner, while the witness believed that he was "self-ordained," and his attorney argued, in the brief, that his testimony was offered as a qualified expert.

The law in Ohio is that a shareholder or officer of a corporation is *not* the owner and cannot *ipso facto* qualify as an expert on the value of the corporate property. Such a person must show that he is qualified because of knowledge gained independently, just as it is gained by an ordinary expert. (See, annotations, 5 A. L. R. 1171; 45 A. L. R. 1494; and 159 A. L. R. 7. Also, *Marlie Trading, Inc.*, v. *Biggs Boiler Works Co.*, 112 Ohio App. 428.)

In the instant case, the testimony of Robert Hardgrove shows some knowledge of real estate, but only as to two residential rental apartments or properties, three recreational cottages, and, perhaps, one commercial building. We do not feel that this was sufficient, as a matter of law, to qualify him as an expert on the fair market value of commercial properties.

4. The trial court admitted testimony of Robert Hardgrove relating to "comparable rents" in the area. Since this is a total "take," the value of the leasehold interest

is not an issue, and evidence concerning comparable rents would not be admissible. Also, Robert Hardgrove could not qualify as an expert simply by checking many properties. His opinion that they were getting only "half as much" rents as they would pay elsewhere was clearly prejudicial.

5. The trial court permitted the property owners, on direct examination, to offer evidence concerning "comparable sales" without first having a proper foundation laid. *Masheter* v. *Hoffman*, 34 Ohio St. 2d 213. The court, before permitting evidence of the sale price, should require the party offering such evidence to show that:

(a) The sale was between a willing seller and a willing buyer, neither of whom is required to buy or sell;

(b) It was an "arm's length" transaction;

(c) It is sufficiently similar in construction, size, location, date of sale, age, condition, and use so as to make it comparable to the property being appropriated.

Such a foundation was not properly laid for the "comparable sale" prices as to 725 East Exchange Street (Auto Supply Warehouse); 756 South Main Street (Sohio Gas Station); 807 South High Street (garage, warehouse and offices). The bald, unsupported statement of a witness that a sales price is comparable does not make it so.

6. While there was no objection, the trial court should not have permitted William Hardgrove to read from an appraisal text book, without there being any foundation laid for such hearsay evidence, then comment upon it before concluding with a leading question to his father.

7. The trial court erroneously permitted Donald C. Louden (a person knowledgeable in warehousing and storage) to testify concerning the needs of Akron Novelty and Merchandise Company, as to warehousing and storage after the building was appropriated, and a bid that he was to submit to them for that purpose, at fifteen cents per square foot. He also was permitted to testify that the basement of the subject property could be used for dry and lightweight warehouse storage. The issue of the cost of relocating the tenant's business was not before the court. Further, the subject property was zoned "U-3 Retail." There was no

evidence that it was fairly reasonable and probable that the zoning would change to "U-4 Warehousing" within the foreseeable future, so as to make warehousing a foreseeable highest and best use.

8. The trial court should not have allowed William Hardgrove to cross-examine the city's expert witness, Nobil, on conjectural values and rents *if* the city of Akron had permitted Hardgrove to remodel its building, and if the city had not, in fact, refused it permits to do so.

9. The trial court erred in permitting William Newlon, a retired businessman, to testify as an expert on fair market values, and on fair rental values and expenses, without any evidence tending to show that he was an expert, or was otherwise qualified to give his opinion relating to fair market values, fair rental values, or expenses. He could only testify as to the actual rents within his knowledge in that neighborhood. Fair rental values per se were not an issue for the jury. The fact that he bought a property and sold one as a result of urban renewal, is not sufficient to establish him as an expert.

10. Even without objection, the trial court should not have permitted Frank Hotloss, a pharmacist, to testify as to rentals on the building he rented for a pharmacy, nor for conjectural rents on a hypothetical expanded building, or at other locations. This information was not relevant to the issues in this case; a proper foundation was not laid, nor was the witness properly qualified. The same witness was erroneously permitted to testify as to the desirability of the subject property for his business, and the fact that he tried to purchase the building, and how he would manage the rental business.

11. It is conceivable that Frank Hotloss, who had bought and sold ten or eleven rental income properties, with proper inquiry, could have been qualified, as an expert witness, on some real estate matters and values. Permitting him to testify, even in the absence of an objection, as to "comparables," such as a restaurant and hotel property, a rejected offer on "Cole and Grant Streets," and a gas station property, was error.

12. The trial court erred in admitting Property Owner's Exhibits C, D, E, P, Q, and R, as they were written testimonial computations on a paper pad presented on an easel. They are not properly admitted in evidence as they are repetitive and tend to emphasize certain oral testimony more so than other oral testimony.

13. The trial court erred in admitting photographs and data on Property Owner's Exhibits H, J, K, L, and M, as they were not properly qualified as "comparable" sales.

14. The trial court erred in permitting William Hardgrove to act as attorney for the corporate property owner. While the court would have to permit an individual owner to represent himself, it does not have to permit a corporation, through its officers, to do so.

The situation placed an additional burden on the trial judge to achieve fairness and justice for both sides in the trial. The trial court "leaned over backwards" in order to be fair to the Hardgroves. Counsel for the city of Akron (after many objections, as well as conferences at the bench and in chambers) declined to object further to avoid creating an impression that the city, through its attorney, was taking advantage of the property owner.

The fact is that Mr. Hardgrove, not being an attorney, precipitated a great deal of error into the trial because of the trial court's tolerance. The net result was a trial replete with improper evidence and collateral issues. The city of Akron was deprived of a fair trial by virtue of these various prejudicial errors. We therefore reverse the judgment of the trial court, and remand this matter to the Court of Common Pleas for a new trial.

*Judgment reversed and cause remanded.*

BRENNEMAN, P. J., and VICTOR, J., concur.