## CONNECTICUT LIGHT AND POWER COMPANY *v.* JOSEPH J. KLUCZINSKY

LOISELLE, LONGO, MacDONALD, RUBINOW and HAMILL, Js.

Argued May 5—decision released September 7, 1976

*Richard J. Scappini,* with whom, on the brief, was *William J. St. John, Jr.,* for the appellant (defendant).

*Robert H. Hall,* for the appellee (plaintiff).

MacDonald, J. This appeal from an unfavorable jury verdict and judgment by a defendant who conducted his own trial without counsel raises, primarily, the question whether a pro se litigant who is unable to obtain trial counsel amenable to his demands and terms can claim as error, on appeal, issues not raised by some form of objection before the trial court. It arises from an action brought by the plaintiff, Connecticut Light and Power Company, against the defendant, Joseph J. Kluczinsky, seeking an injunction and claiming damages for expenses incurred by the plaintiff by reason of the defendant's interference with the plaintiff's exercise of its rights to construct a power line on its rights-of-way across property of the defendant.

The basic facts giving rise to this litigation are not controverted and may be summarized briefly. The plaintiff is the grantee of two easements and rights-of-way, one from the defendant's father and predecessor in title and the other from the defendant himself, for the construction and maintenance of transmission towers and electrical power lines, and, in connection therewith, specifically giving the plaintiff the right to use all roads existing on the property included in the rights-of-way and also the use of roads and driveways located upon other adjoining land of the grantors. In 1969, when the plaintiff began its construction work, the terrain on one of the rights-of-way was so softened by weather conditions that it was necessary to spread gravel on the roadways located thereon in order for the construction company hired by the plaintiff to proceed with erection of the transmission towers. On the day the gravel was to be placed on the roadways, the defendant, carrying a can containing liquid, a long stick with a rag on the end of it, and a book of matches, entered the right-of-way and approached the lead truck containing gravel; he threw liquid from the can on the side of the truck and attempted to light the rag on the stick with matches. James Davis, the plaintiff's contractor in charge of the construction work, smelled gasoline and confronted the defendant to prevent him from attempting to ignite the truck. As a result of this confrontation, police were called to the scene, the construction work was stopped and the plaintiff proceeded to obtain an injunction against the defendant ordering him "to desist and refrain from threatening the employees of the plaintiff and the employees of its contractor, from causing any injury to the aforesaid employees, and from inter-

fering with the exercise by the plaintiff of its rights in your land" as described in the easements. Even after issuance of that injunction, employees of the contractor refused to work at the job site without protection and the plaintiff hired a police officer for protection of the workmen during all hours while work was being performed in the vicinity of the defendant's nearby home. Further delays in construction of the power line were caused by threats by the defendant that if construction continued there "would be bloodshed," until the plaintiff filed a motion for contempt in the Court of Common Pleas, after which the work finally was completed.

The plaintiff also claimed damages of $5000 for delays in construction and the expense of furnishing police protection for its employees and those of its contractor, and the defendant counterclaimed for $15,000 for alleged damage to his land and house caused by the plaintiff by its road construction and by alleged blasting on the rights-of-way. The defendant, after consulting several attorneys who, for reasons which readily become apparent from an examination of the transcript, declined to represent him, conducted a five-day trial pro se. It is equally apparent from the transcript that the trial court was patient, courteous and considerate, under most trying circumstances, with the defendant's earnest but frequently misguided efforts to conduct his case without assistance of counsel.

This court consistently has been solicitous of the rights of pro se litigants. *Keane* v. *Smith,* 163 Conn. 606, 316 A.2d 416, cert. denied, 409 U.S. 1113, 93 S. Ct. 927, 34 L. Ed. 2d 696; *Bitonti* v. *Tucker,* 162 Conn. 626, 295 A.2d 545, cert. denied, 409 U.S.

851, 93 S. Ct. 62, 34 L. Ed. 2d 94. "In such a situation not only this court, but our highest trial court, so far as they properly can, will endeavor to see that such a . . . [litigant] shall have the opportunity to have his case fully and fairly heard, and will endeavor to aid a result, such as this case presents, brought about by . . . [his] lack of legal education and experience, rather than to deny him an opportunity to be heard through a too strict construction of a rule of practice, when this course does not interfere with the just rights of the . . . [other party], nor unduly impede the court in making a proper record for appeal." *Higgins* v. *Hartford County Bar Assn.,* 109 Conn. 690, 692, 145 A. 20. In line with the foregoing statement of our policy, the transcript was consulted as previously mentioned, and we will consider those claims of error where there was some indication during the trial, however informal, that the defendant disagreed with the court's ruling; but with respect to other claimed errors, notably those pertaining to the court's charge to the jury and the allowance into evidence of evidence now claimed to be hearsay, our review thereof at this late date would, indeed, "interfere with the just rights" of the plaintiff.

One claimed error to which the defendant might be said to have registered objection during the trial pertained to the court's denial of his request to open his case in order to present evidence in support of his counterclaim for alleged damage to his home caused by blasting. This issue had been raised by the pleadings and the defendant had been fully aware of this claim throughout the trial. When the court informed him that he could not address the jurors on the subject of damages during a court-supervised inspection of the premises because

no evidence of blasting damage had been presented during the trial, the defendant sought permission to open his case on that issue, which the court denied. After the viewing of the premises by the jurors and just prior to final arguments, the defendant, in the course of objecting to the filing by the plaintiff of a supplemental charge, stated at the end of his lengthy remarks: "But I did take it for granted that when the jury was brought out to my property yesterday, that they were going to be shown all the damages and all my complaints, but I was denied this yesterday, Your Honor, and I think that this is out of order also." Construing this liberally as a timely objection to the denial of a motion to open the case, we consider whether that denial was error.

Refusal to open the case after the parties have rested is a ruling entirely within the discretion of the trial court. *Lawrence* v. *Abrams,* 121 Conn. 480, 482, 185 A. 414. "The trial court is vested with a large discretion over matters occurring in the conduct of the trial. While this is a judicial discretion and therefore subject to some degree of review and control, its exercise will not be interfered with unless it has been clearly abused to the manifest injury of a litigant." *Wooster* v. *Wm. C. A. Fischer Plumbing & Heating Co.,* 153 Conn. 700, 702, 220 A.2d 449. At the time the defendant requested that the case be opened, the trial had been in progress for four-and-a-half days, of which a day-and-a-half had been devoted to jury selection, a day-and-a-half to the plaintiff's case in chief, and a day-and-a-half to the defendant's defense and counterclaim. The defendant had been allowed to testify as to anything he desired and, at what appeared to be the close of his direct evidence, the

court was extremely solicitous of his right to continue further. The defendant had insisted that the jurors view his property, and it was not unreasonable for the court to assume that the viewing would take at least two hours and that arguments, charge, deliberations and verdict would take another full day. Even if the defendant alone had been permitted to testify, without the delay inherent in obtaining a witness qualified to testify as to the damages, it would have been necessary to postpone the viewing until the sixth day, with the likelihood that the arguments, charge, deliberations and verdict would have consumed a seventh trial day. The court was entitled to take into account the question of the sound use of judicial time in exercising its discretion as it did. When the defendant rested, he had presented no evidence of blasting, or of any physical damage caused by blasting, or of the dollar amount of that damage. The defendant had had ample opportunity to present that evidence before he rested. Also, from statements made by him, it was apparent that he was not prepared to go forward expeditiously with competent evidence on those elements of proof necessary to sustain his claim for damages. He was, therefore, neither entitled, as a matter of law, to have the case opened, nor in a position to go forward if it were opened. The court's denial of the motion to open was clearly warranted. "This request came at so late a stage of the cause that its denial was well within the discretion of the trial court." *Currie* v. *Consolidated Ry. Co.*, 81 Conn. 383, 388, 71 A. 356.

Another claimed error to which the defendant now claims to have registered an objection was in permitting the plaintiff to amend its complaint by deleting a claim which the plaintiff had failed to

prove, namely of threatening conduct of the defendant "including threats to shoot any such employee stepping into said rights-of-way." It is difficult to interpret as an objection the defendant's express consent: "It should go out, yes," but even considering his long dissertation on the subject as indicating some reservation or even disapproval, it was a ruling entirely within the discretion of the trial court, and we cannot find any abuse of that discretion.

This court recently reviewed the "exceptional circumstances" under which it will consider claimed errors on the part of the trial court which were not distinctly raised and ruled upon at the trial. "Only two situations may constitute 'exceptional circumstances.' 'The first is . . . where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. . . . The second "exceptional circumstance" may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial.' *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576. If the defendant's claim is to be considered, then it must come under the second 'exceptional circumstance.'" *State* v. *Simms,* 170 Conn. 206, 208, 365 A.2d 821. The defendant's appellate counsel has made a valiant effort to qualify as "exceptional circumstances" the fact that: "It is unlikely that the unique circumstances of this appellant's numerous, unsuccessful, and earnest attempts to retain counsel will be duplicated often." An examination of the record, on the contrary, indicates rather strongly that the defendant's attempts to obtain counsel failed because of his own hostile attitude toward attorneys, of whom, in general, he was very sus-

picious.  To rule as urged by the defendant's counsel would be, in effect, to hold that a litigant who has deliberately chosen to represent himself at trial has "clearly been deprived of a fundamental constitutional right and a fair trial."  Such a decision would encourage litigants to bypass the legal profession at the trial level and, if dissatisfied with the results, give appellate counsel the opportunity, with the advantage of hindsight, to seek review of claimed errors which the trial court never had an opportunity to correct.  The effect upon the administration of justice of a number of such trials being thus conducted in our courts would be somewhat akin to the confusion that would reign in medical circles if ailing patients were permitted to direct hospital treatment without the advice and assistance of qualified physicians.

There is no error.

In this opinion the other judges concurred.