324 S.E.2d 391

**Myrtle Sue BLAIR**

v.

**Elliott E. MAYNARD, Judge.**

**No. 16488.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1984.

Myrtle Sue Blair, pro se.

Gregory W. Bailey, Deputy Atty. Gen., Charleston, for respondent.

McGRAW, Justice:

This is an original proceeding in which the petitioner, Myrtle Sue Blair, seeks a

writ of mandamus to compel the respondent, Judge Elliott E. Maynard of the Circuit Court of Mingo County, to allow her to appear *pro se* in a civil action brought by the petitioner in that court. A trial in this case was previously begun in which the petitioner was acting as her own counsel. An early mistrial resulted, however, when the petitioner made certain improper remarks in her opening statement to the jury.[1] Subsequently, the respondent in-

1. The following excerpt from the petitioner's opening statement to the jury immediately preceded the declaration of a mistrial:

MRS. BLAIR: ... Mr. Koontz [the defendants' attorney] will tell you what he has to prove and what he intends to put forth. I have witnesses. Some of them will not be allowed and their statements will not be allowed.

MR. KOONTZ: Objection, Your Honor.

THE COURT: Sustained.

MRS. BLAIR: I have my witnesses and Mr. Koontz has his witnesses. We are each supposed to know the law and make objections and we are to extend courtesy to everyone. I am not the most powerful person in this room and the Judge has the responsibility of protecting my rights and other rights. This is his courtroom and he will determine what we can and cannot do here.

I thank you for coming out. We may not get to closing arguments in this case, because if you are well versed in this and I do not know at this point who have been witnesses here, as a matter of procedure here I will make motions at the proper time for a directed verdict.

MR. KOONTZ: Objection, Your Honor.

THE COURT: Yes. The matter of a directed verdict will be taken up by the Court out of the hearing of the jury.

MRS. BLAIR: At any point in this trial we could settle or you could be instructed by the Court to do or not to do such a thing and from this this will flow. I have no idea how much time this will take and how many objections there will be, so I cannot gauge it. As you all know by now, I am not a lawyer and I have nothing to go on but previous experience.

MR. KOONTZ: Objection, Your Honor. If we may approach the bench? Plaintiff is not a lawyer and this is my first civil trial and I don't see what relevance this has to the issues that we're deciding here today.

THE COURT: Approach the bench.

(Whereupon, the court and counsel confer at the bench and the following proceedings were had out of the hearing of the jury.)

MR. KOONTZ: Your Honor, I don't see what relevance this has.

THE COURT: Yes. This is most difficult. Mr. Koontz, this is your first civil trial and Mrs. Blair is trying to represent herself in this case and this case is very important to her, very important to both parties. Mrs. Blair, the remarks you have made to this jury to this point are not proper.

MR. KOONTZ: Your Honor, that was going to be my next statement. I am going to move the Court for a mistrial on the basis of her remarks before this jury.

MRS. BLAIR: I would object to that, Your Honor. I will let you strike everything I have said in opening statement, but—

THE COURT: —Mrs. Blair, you have said things to the jury that were extremely improper. The statement about a directed verdict was improper and should not have been said in the presence of this jury. The matter of settlement should not have been mentioned to them. Those are not matters for the jury to consider or determine or hear. From the beginning of this case I have tried to stress to you the importance of your having counsel represent you. I am going to grant a mistrial for two reasons. First of all, I think the remarks made in opening statements regarding the possibility of a directed verdict and the other reason was you stated there would be witnesses or statements that the court wouldn't let them hear. Those remarks constitute substantial gross error that cannot be corrected by a curative instruction. Mrs. Blair, this is a very complicated case and this case is extremely important to you. I realize that, but ma'am, you need to have counsel represent you in this matter. You need a lawyer. I cannot tell you how to handle your case and Mr. Koontz can't tell you how to handle the case, but you need counsel to represent you and advise you and handle your case for you. I told you this from the outset and we didn't even get past opening statements. I tried my best to let you represent yourself, but I don't think it is going to be possible in this case. I just don't think it is. I want you to have a fair trial and I want Mr. Koontz and his clients to have a fair trial. It is not fair to them to allow you to make these remarks.

MRS. BLAIR: Your Honor, I did not mean to say anything improper. I was merely informing the jury as to how we were going to proceed.

THE COURT: Mrs. Blair, there are certain things the jury cannot hear. The purpose of doing what we are doing at the bench here is so that the jury can't hear what we are saying. That is the purpose of having motions heard out of their presence. There are certain things they are not supposed to hear and consider when considering of their verdict. There are things that are improper for them to hear and I wish I could make you understand that, ma'am.

MRS. BLAIR: Your Honor, are you telling me at the conclusion of my evidence it would

formed the petitioner that the case would be set again for trial only when she had an attorney to assist her. The respondent maintains that, due to the petitioner's limited experience and the legal complexities of this particular case, allowing the petitioner to continue to appear as her own counsel will likely result in more mistrials, unfairly imposing additional burden and expense upon the defendants. The petitioner, also citing economic reasons, wishes to continue *pro se.*

## I

Self-representation by a litigant was formerly a duty rather than a privilege or right. II W. Odgers & W. Odgers, *The Common Law of England* 1423 (1911). Preceding the gradual evolution of the legal profession, the common law requirement was that a party "should appear and conduct his own cause in his own words." 1 F. Pollock & F. Maitland, *The History of English Law* 211 (2nd ed. 1898). Even long after the establishment of the legal profession, self-representation often maintained a preferred, if not mandatory, status. In England, "not until 1837 was counsel allowed in cases of felony." T. Plucknett, *A Concise History of the Common Law* 435 (5th ed. 1956). For a variety of legal and cultural reasons, "it was only gradually that an attorney was allowed to take the place of his client for all purposes." II W. Holdsworth, *A History of English Law* 312 (4th ed. 1936).

Justice Stewart, in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), concisely summarized the early American experience.

In the American Colonies the insistence upon a right of self-representation was, if anything, more fervent than in England.

The colonists brought with them an appreciation of the virtues of self-reliance and a traditional distrust of lawyers. When the Colonies were first settled, "the lawyer was synonymous with the cringing Attorneys-General and Solicitors-General of the Crown and the arbitrary Justices of the King's Court, all bent on the conviction of those who opposed the King's prerogatives, and twisting the law to secure convictions." This prejudice gained strength in the Colonies where "distrust of lawyers became an institution." Several Colonies prohibited pleading for hire in the 17th century. The prejudice persisted into the 18th century as "the lower classes came to identify lawyers with the upper class." The years of Revolution and Confederation saw an upsurge of antilawyer sentiment, a "sudden revival, after the War of Revolution, of the old dislike and distrust of lawyers as a class." In the heat of these sentiments the Constitution was forged.

This is not to say that the Colonies were slow to recognize the value of counsel in criminal cases. Colonial judges soon departed from ancient English practice and allowed accused felons the aid of counsel for their defense. At the same time, however, the basic right of self-representation was never questioned. We have found no instance where a colonial court required a defendant in a criminal case to accept as his representative an unwanted lawyer. Indeed, even where counsel was permitted, the general practice continued to be self-representation.

be improper for me to move for a directed verdict?

THE COURT: No, ma'am. That's not what I'm telling you. What I'm telling you is that that is not a matter for the jury's consideration. That is a matter of law that the court must rule upon. It is something that a jury doesn't even know about. I don't want the jury to know I can take cases away from them by means of a directed verdict. That is not something they are to know. Those are motions to be hearing out of their presence and hearing.

MRS. BLAIR: Your Honor, I can't see where my remarks before this jury would warrant a mistrial. I don't think this is fair to my case.

THE COURT: Nor would it be fair to Mr. Koontz's clients, Mrs. Blair. They have a case to present and the evidence and proceedings before this court are going to be conducted in a proper manner. That will be the ruling of the Court.

MRS. BLAIR: Please note my strenuous objection for the record.

THE COURT: Your objection is noted.

422 U.S. at 826–28, 95 S.Ct. at 2537, 45 L.Ed.2d at 576–77 (footnotes omitted).

Whether viewed as an inherent right, or guaranteed by constitution or statute, the right to act as one's own attorney in courts of law is still uniformly recognized. *See, e.g., Phillips v. Tobin,* 548 F.2d 408 (2nd Cir.1976); *Sangster v. Sangster,* 366 So.2d 1136 (Ala.Civ.App.1979); *People v. Dunlap,* 623 P.2d 408 (Colo.1981); *Dobbins v. Dobbins,* 234 Ga. 347, 216 S.E.2d 102 (1975), *cert. denied,* 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975); *Custom Builders, Inc. v. Clemons,* 52 Ill.App.3d 399, 367 N.E.2d 537, 10 Ill.Dec. 149 (1977); *State ex rel. Stephan v. O'Keefe,* 235 Kan. 1022, 686 P.2d 171 (1984); *Hickman v. Frerking,* 4 Kan.App.2d 590, 609 P.2d 682 (1980); *Ann Arbor Bank v. Weber,* 338 Mich. 341, 61 N.W.2d 84 (1953); *Maldonado v. State Board of Parole,* 102 Misc.2d 880, 424 N.Y. S.2d 589 (1979); *State v. Pledger,* 257 N.C. 634, 127 S.E.2d 337 (1962); *Akron v. Hardgrove Enterprises, Inc.,* 47 Ohio App.2d 196, 353 N.E.2d 628, 1 Ohio Op.3d 275 (1973); *Washington State Bar Ass'n v. Great Western Union Savings and Loan Ass'n,* 91 Wash.2d 48, 586 P.2d 870 (1978).

The right of parties to appear on their own behalf in the courts of this State is firmly rooted in our state constitution. In *State v. Blosser,* 158 W.Va. 164, 207 S.E.2d 186 (1974), this Court recognized that the right to assistance of counsel guaranteed to persons accused of crimes by West Virginia Constitution art. III, § 14 contained the correlative right of self-representation in criminal proceedings. In Syllabus point 2, this Court held that:

An accused may represent himself in a criminal proceeding, but the election to do so must be predicated upon an intelligent and understanding waiver by the accused of the fundamental right to effective assistance of counsel upon a full and fair disclosure and explanation by the trial court of the constitutional right to counsel.

The following year, the United States Supreme Court similarly held that, under the sixth amendment of the federal constitution, applicable to the states by the fourteenth amendment, defendants in state criminal prosecutions had an independent right to defend themselves without assistance of counsel. *Faretta v. California, supra; see also Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942) ("[T]he Constitution does not force a lawyer upon a defendant."); *Osborn v. Bank of the United States,* 22 (9 Wheat.) U.S. 738, 829, 6 L.Ed. 204, 226 (1824) ("Natural persons may appear in court, either by themselves or by their attorney.").[2]

The right, claimed by the petitioner herein, to act as her own attorney in civil proceedings, although derived from a different source, stands on equal footing with the parallel right accorded the criminally accused under West Virginia Constitution art. III, § 14. West Virginia Constitution art. III, § 17 provides, in pertinent part, that, "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law...."

■ This provision "contemplates that every person ... shall have recourse to the courts to seek redress of his injuries." *Pittsburgh Elevator Company v. Board of*

---

2. As for litigants in federal court, whether a party to criminal or civil proceedings, the right to appear without counsel has been statutorily granted since 1789. *See* 1 Stat. 73, § 35; 36 Stat. 1160, § 272; 62 Stat. 944, § 1654; 63 Stat. 103, § 91. The current version, codified at 28 U.S.C. § 1654 (1982) provides that "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct cases therein."

The federal statute's embodiment of this ancient and honored right predates both our state constitution and the federal constitution's right to the assistance of counsel contained in the sixth amendment. Additionally, in pre-succession (West) Virginia, self-representation was mandatory during the period when "mercenary attorneys" were prohibited by statute. *See* Kirtland, *Keep Your Eye on the Bastards! Or Sobering Reflections on the 150-Year Record of Early Virginia's Attitude Toward Lawyers,* 14 U.Tol.L. Rev. 685 (1983).

*Regents,* 172 W.Va. 743, 310 S.E.2d 675, 686 (1983).[3] This constitutional right of access to the courts is not limited to those persons able and willing to employ an attorney. Litigants who, by choice or necessity, seek to advocate their own cause cannot be denied this fundamental right. As observed by another court, "the right to self-representation embodies one of the most cherished ideals of our culture; the right of an individual to determine his own destiny." *People v. McIntyre,* 36 N.Y.2d 10, 324 N.E.2d 322, 325, 364 N.Y.S.2d 837, 842 (1974). "Like most fundamental freedoms, the right to proceed *pro se* derives from the belief that respect for human dignity is best served by respect for individual freedom of choice." *Soto v. United States,* 369 F.Supp. 232, 235–36 (E.D.Pa. 1973), *aff'd* 504 F.2d 1339 (3rd Cir.1974).

The inherent right of self-autonomy over one's causes has previously been recognized by this Court in reference to civil proceedings. In *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959), we stated that "natural persons may manage, prosecute, or defend their own actions, suits and proceedings and defend prosecutions against themselves except when the public welfare demands otherwise, and such activity does not constitute the practice of law." 144 W.Va. at 526, 109 S.E.2d at 434–36.[4] Moreover, in *Sisler v. Hawkins,* 158 W.Va. 1034, 217 S.E.2d 60 (1975), on appeal from a civil action, we held in Syllabus point 3 that, "A litigant has the right to represent himself without counsel if he knowingly and intelligently elects to do so." The basis for this right was not specified in *Earley* and *Sis-*

*ler.* Today, however, we hold that under West Virginia Constitution art. III, § 17, the right of self-representation in civil proceedings is a fundamental right which cannot be arbitrarily or unreasonably denied.

## II

Although the right to appear *pro se* is available to all natural persons wishing to exercise this option, it cannot be employed in a manner which unreasonably interferes with the duty of the trial court to supervise and control judicial proceedings to ensure fairness to all parties. The countervailing interests which are present in any adversial proceeding pose special circumstances for a trial court when a party chooses to appear *pro se.* Furthermore, these concerns are particularly heightened when the right to a jury trial is demanded, as is the case here.[5]

However, trial courts possess a discretionary range of control over parties and proceedings which will allow reasonable accommodations to *pro se* litigants without resultant prejudice to adverse parties. *Pro se* parties, like other litigants, should be provided the opportunity to have their cases "fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party." *Conservation Commission v. Price,* 193 Conn. 414, 479 A.2d 187, 192 n. 4 (1984).

We are not proposing that trial judges should become surrogate attorneys for *pro se* litigants. The fundamental tenet that the rules of procedure should work to do substantial justice,[6] however, commands that judges painstakingly strive to

---

3. The "open courts" mandate of West Virginia Constitution art. III, § 17 also protects the public's right of access to the courts and agencies exercising quasi-judicial authority. *See Daily Gazette Company, Inc. v. Committee on Legal Ethics,* 174 W.Va. 359, 326 S.E.2d 705 (1984); *State ex rel. Herald Mail Co. v. Hamilton,* 165 W.Va. 103, 267 S.E.2d 544 (1980).

4. Also cognizant of this inherent right, the Legislature declared in West Virginia Code § 30–2–4 (1980 Replacement Vol.), that, "It shall be unlawful for any natural person to practice or appear as an attorney-at-law *for another* in a court of record in this State, ... without first

having been duly and regularly licensed and admitted to practice law...." (Emphasis added.); *see also* West Virginia Code § 50–4–4a (1980 Replacement Vol.); *State ex rel. Frieson v. Isner,* 168 W.Va. 758, 285 S.E.2d 641 (1981).

5. The record indicates that the defendants in the underlying action seek a jury trial.

6. *See, e.g.,* West Virginia Rules of Civil Procedure, Rules 1 and 61: *Dishman v. Jarrell,* 165 W.Va. 709, 271 S.E.2d 348 (1980); *Talkington v. Barnhart,* 164 W.Va. 488, 264 S.E.2d 450 (1980). *See also* D. Olson, *Modern Civil Practice in West Virginia* § 1.10, at 21–24 (1984).

insure that no person's cause or defense is defeated solely by reason of their unfamiliarity with procedural or evidentiary rules. *See, e.g., Mazur v. Department of Transportation,* 507 F.Supp. 3 (E.D.Pa. 1980), *aff'd,* 649 F.2d 860 (3rd Cir.1981), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 973 (1981); *Connecticut Light and Power Company v. Kluczinsky,* 171 Conn. 516, 370 A.2d 1306 (1976); *Lombardi v. Citizens Nat'l Trust & Savings Bank,* 137 Cal.App.2d 206, 289 P.2d 823 (1955).

Of course, the court must not overlook the rules to the prejudice of any party. The court should strive, however, to ensure that the diligent *pro se* party does not forfeit any substantial rights by inadvertent omission or mistake. Cases should be decided on the merits, and to that end, justice is served by reasonably accommodating all parties, whether represented by counsel or not. This "reasonable accommodation" is purposed upon protecting the meaningful exercise of a litigant's constitutional right of access to the courts. Therefore, ultimately, the *pro se* litigant must bear the responsibility and accept the consequences of any mistakes and errors. *See, e.g., Viles v. Scofield,* 128 Colo. 185, 261 P.2d 148 (1953); *Alexander v. Jeanerette,* 371 So.2d 1245 (La.Ct.App.1979).

This Court recognizes that "[t]he proper scope of the court's responsibility [to *pro se* litigants] is necessarily an expression of careful exercise of judicial discretion and cannot be fully described by specific formula." ABA Commission on Standards of Judicial Administration, *Standards Relating to Trial Courts,* § 2.23 Conduct of Cases Where Litigants Appear Without Counsel (Commentary) (1976). Each case presents a wholly different set of circumstances which require careful attention so as to preserve the rights of all parties. Nevertheless, the fundamental right of self-representation recognized in West Virginia Constitution art. III, § 17 may not be denied without a clear showing in the record that the *pro se* litigant is engaging in a course of conduct which

demonstrates a clear intention to obstruct the administration of justice.

In the underlying case, the petitioner's remarks which precipitated the declaration of a mistrial have not been shown to be anything other than an excusable mistake. While it may be more likely that such a mistake would be committed by a *pro se* litigant, similar errors are not uncommonly committed by even experienced attorneys. Prohibiting this petitioner from again appearing to present her case is an unreasonably harsh measure under these circumstances.

Accordingly, for the reasons stated herein, we grant the writ of mandamus.[7]

Writ granted.

---

7. The petitioner has also requested the removal of the respondent from her case. There is nothing in the record to warrant such action, and therefore, we deny this request.