# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**P.M., Defendant Below, Petitioner**

**vs)  No. 13-0068** (Cabell County 03-D-628)

**B.M., Plaintiff Below, Respondent**

**FILED**

October 18, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner P.M. ("Father"), *pro se,*[1] appeals the order of the Circuit Court of Cabell County affirming the family court's "Order Granting Modification" that reduced Father's child support obligation to fifty dollars per month due to his incarceration, but denied Father's request for a reduction to zero support. Respondent B.M. ("Mother"), did not file a response. Respondent West Virginia Bureau for Child Support Enforcement ("BCSE"), by counsel Kimberly D. Bentley, filed a response. Father filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Father and Mother were divorced by order entered March 22, 2004. Father was ordered to pay $363.51 per month to Mother for support of the couple's daughter, J.M., born on August 8, 1997. BCSE states that it received regular monthly support payments from Father until June of 2008, about the time Father was incarcerated in prison.[2]

In June of 2011, Father filed a motion with the family court to suspend enforcement of his child support obligation and the calculation of interest thereon. Father requested that his child support obligation be reduced to zero, retroactive to the date of his incarceration. No hearing was scheduled on Father's motion.

---

[1]Due to Father's incarceration, Shawn Patrick Bartram, Esq., was appointed guardian ad litem to represent his interests before the family court. The circuit court denied Father's request for appointment of a guardian ad litem for purposes of appeal.

[2]The record is unclear as to the actual date of Father's incarceration. Father's brief states at one point that he was incarcerated in 2006, but states at two other points that he was incarcerated in 2008. Additionally, the briefs do not reveal the nature of Father's conviction, beyond that it was for a felony.

1

BSCE received a copy of Father's motion and filed its own petition for modification of child support in May of 2012. The family court conducted a hearing on BCSE's petition on July 31, 2012. Father's appointed guardian ad litem appeared in person, and Father appeared by telephone. BCSE objected to Father's motion for a complete reduction in support, arguing that pursuant to West Virginia Code § 48-13-302, the minimum support obligation is fifty dollars per month. Additionally, BCSE argued that modification of support can be prospective only, not retroactive as Father requested.

The family court found, in pertinent part, that Father had no attributed income due his incarceration; that Mother had a monthly gross income of $1,256.67; that the amount of child support indicated by the guidelines was fifty dollars per month; and, since the divorce order was entered in 2004, there had been a significant change in circumstances as the order provided for at least 15% more support than required by the guidelines. By order entered on September 24, 2012, the family court denied Father's request for a reduction in child support to zero, but reduced the support to fifty dollars per month, effective July 1, 2011, in recognition of Father's filing for modification in June of 2011. The family court also released Father's guardian ad litem.

Father timely appealed the family court's order to circuit court, and by separate motion, requested appointment of a guardian ad litem. By order entered December 21, 2012, the circuit court denied Father's appeal and request for oral argument, denied Father's motion for guardian ad litem, and affirmed the order of the family court. Father now appeals to this Court.

Father raises three assignments of error. First, he argues that the failure to reduce his child support obligation to zero is contrary to the prior decisions of this Court that the child support obligation of an incarcerated person must be within his actual earnings while incarcerated and such other assets which are available to the incarcerated prisoner to provide such support as this Court held in *Adkins v. Adkins,* 221 W.Va. 602, 656 S.E.2d 47. In *Adkins,* this Court recognized that child support obligations continue when a parent is incarcerated, but that the support obligation must be based on the actual income and assets available to the obligor during incarceration. Still, this Court expressly acknowledged that the reduction due to incarceration does not require a reduction to zero:

> Despite our finding that pre-incarceration income from wages may not be attributed as income for child support purposes, nothing stands in the way of family courts entering support orders that reflect actual income and resources of an incarcerated parent. Plainly, parents have an abiding duty to provide support for their dependent children. Courts remain obligated under the relevant statutory guidelines for child support awards to consider all sources of income or other property when calculating support payments initially or upon modification. *Nor should our holding be taken to suggest that the provisions of West Virginia Code § 48-13-302 regarding minimum child support payments are rendered meaningless when a parent is incarcerated.* Accordingly, we further hold that the support obligation of an incarcerated person should be set in light of that person's actual earnings while incarcerated and other assets of the incarcerated person practically available to provide such support.

2

*Adkins,* 221 W.Va. at 609, 656 S.E.2d at 54 (2007) (emphasis added).

Clearly, *Adkins* does not require the family court to ignore the statutory minimum child support obligation as Father argues. Additionally, insofar as Father argues that the support award must be reversed because it forces his income below the federal poverty level, we find that the impact on his income is the result of his incarceration, not the support obligation. Similarly, Father argues that the family court failed to adjust Mother's income from its 2004 level in determining the current support obligation. However, because the circuit court reduced the support to its statutory minimum, Mother's income is of no consequence. We find no error in the Father's child support obligation being reduced to fifty dollars per month.

Second, Father argues that the circuit court erred by refusing to appoint him a guardian ad litem for purposes of his appeal to circuit court, and presumably, to this Court. Rule 17(c) of the West Virginia Rules of Civil Procedure states, in pertinent part:

> The court or clerk shall appoint a discreet and competent attorney at law as guardian ad litem for an infant, incompetent person, or convict not otherwise represented in an action, or shall make such other order as it deems proper for the protection of the infant, incompetent person, or convict.

Father argues that a guardian ad litem is mandated by the rule because his former wife sued him for divorce in 2003 and the Department of Corrections did not assist him in seeking a reduction of support when he was first incarcerated. We disagree with Father's argument. Rule 17(c) entitles an unrepresented prisoner to a guardian ad litem only when an action is brought against the prisoner. In this case, it was Father who originally initiated the modification by filing a petition with the family court seeking to eliminate his support obligation. Furthermore, it was Father who appealed the family court's order to circuit court. The fact that Mother sued for divorce and the fact that Father blames the Department of Corrections for his continued support obligation is of no consequence to the analysis of Rule 17(c).

Last, Father contends that the sustained child support obligation from the time of his incarceration in or around 2008 to July 1, 2011, unlawfully enhances his punishment for his criminal acts. He reasons that the failure to retroactively eliminate his support obligation constitutes an unlawful fine. However, we find that all of the parties subject to the 2004 divorce order were bound by that order until and unless one of the parties sought modification of its terms. The record is clear that until 2011, Father filed nothing to allow the family court to address any change in circumstances. The family court was not at liberty to act on its own to modify Father's obligation. *See Blair v. Maynard,* 174 W.Va. 247, 324 S.E.2d 391 (1984) (holding that the court cannot act as "surrogate attorney" for a pro se litigant.)

We find that Father was given the benefit of his initial petition seeking modification, despite the fact that the family court did not set a hearing thereon. Rule 23 of the West Virginia Rules of Practice and Procedure for Family Court provides that, "[e]xcept for good cause shown, orders granting relief in the form of spousal support or child support shall make such relief retroactive to the date of service of the motion of relief." In the present case, the family court

made Father's reduction in support retroactive to the time of his filing in June of 2011. However, the lower courts were bound by this Court's holding in *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987), that requires modifications of spousal and child support to be prospective only, absence a showing of fraud. Accordingly, the lower courts committed no error in failing to reduce or eliminate Father's child support obligation retroactive to the time of his incarceration.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 18, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II