602 S.E.2d 476

**In re: GORDON G., III, and Nicholas G.**

**No. 31609.**

Supreme Court of Appeals of West Virginia.

Submitted: June 9, 2004.

Filed: June 29, 2004.

Darrell V. McGraw, Jr., Esq., Attorney General, Charleston, West Virginia, Angela A. Ash, Esq., Assistant Attorney General, Beckley, for Wvdhhr.

Philip J. Tissue, Esq., Oak Hill, for Guardian ad Litem.

## PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Fayette County entered on July 9, 2003, following a June 26, 2003 hearing on an abuse and neglect petition. Pursuant to that order, the abuse and neglect petition brought against the parents in this action, Gordon G. II and Pamela G.,[1] concerning their two children, Gordon G. III and Nicholas G., was dismissed. In this appeal, the appellant, the Department of Health and Human Resources ("DHHR") contends that the circuit court erred by dismissing the petition. This Court has reviewed the petition for appeal, all matters of record, and briefs of the parties. We are of the opinion that the circuit court's dismissal of the DHHR's petition was in error. Accordingly, we reverse the decision of the circuit court and remand for further proceedings.

## I.

### FACTS

The appellant, the DHHR, along with Philip Tissue, Esq., Guardian ad Litem ("GAL") for Gordon G. III and Nicholas G., appeal the July 9, 2003 order issued by the Circuit Court of Fayette County. In that order, the circuit court dismissed the DHHR's petition finding that the DHHR had not presented sufficient evidence during the June 26, 2003 hearing to sustain a finding of probable cause that Gordon G. III and Nicholas G. were

---

**1.** We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties. *See, e.g., West Virginia Dept. of Human Services v. La Rea Ann C.L.,* 175 W.Va. 330, 332 S.E.2d 632 (1985).

abused and/or neglected under the definition of West Virginia Code § 49–1–3 (1999). As an initial matter, we note that the record provided to this Court on appeal is lacking in detail with regard to relevant facts.[2]

On August 16, 2002, a case was opened with the Fayette County DHHR based on a report[3] alleging that the parents, Pamela G. and Gordon G. II, were drinking and driving with their thirteen and twelve-year-old children, Gordon G. III and Nicholas G., in the vehicle. While this particular incident was unsubstantiated, the parents acknowledged that they had been intoxicated while caring for their children on myriad occasions and admitted that they could not provide proper supervision. Furthermore, Gordon G. II admitted that he is an alcoholic and suffers from depression.

On November 25, 2002, the DHHR became aware of an incident involving Pamela G. when she severely burned herself while she was intoxicated. The incident occurred shortly before the children arrived home from school. As a result of this injury, she was hospitalized and subsequently referred to the Mothers Program[4] for substance abuse treatment. As a result of her failure to participate in the Mothers Program, Pamela G. was referred to F.M.R.S. Health Systems, Inc.[5] ("F.M.R.S.") in January of 2003. Again, she was non-compliant with those substance abuse treatment services.

Later, while Pamela G. was in the hospital for burn treatment, Gordon G. II appeared at the Oak Hill office of the DHHR requesting help for his substance abuse problem. He signed a voluntary placement agreement with the State turning over custody of his children so that he could receive treatment. Nonetheless, he failed to attend his scheduled appointment at Thomas Memorial Hospital on November 27, 2002. Thereafter, a referral for Gordon G. II was made to F.M.R.S. in December of 2002 for substance abuse treatment; however, he has received no treatment as he has been non-compliant with the program.

From December 4, 2002 to March 10, 2003, Gordon G. III and Nicholas G. were placed in the custody of their paternal grandfather, Paul C. However, on March 10, 2003, Pamela G. and Gordon G. II contacted Child Services and expressed their interest in regaining custody of their children. The DHHR then returned custody of the children to the parents based on an agreement that they adhere to a safety plan through the Children's Home Society and seek substance abuse treatment. At the time of the filing of this appeal, neither Pamela G. nor Gordon G. II had sought any treatment from F.M.R.S.

Subsequently, in April of 2003, Gordon G. II was arrested in Beckley for public intoxication and later that same month, on April 29th, the DHHR responded to a report alleg-

2. The DHHR's petition and brief to this Court states that "[t]his statement of facts is based on pleadings and the memory of DHHR participants due to the refusal of Judge Vickers to approve the provision of transcripts." Because of the seriousness of this accusation, we combed the record in this case trying to locate the Appellate Transcript Request Form ("ATR") that the DHHR had to submit in order to obtain a transcript and were unable to locate it. We also sought to discover in the record where Judge Vickers might have interfered with the DHHR's obtaining a transcript, but were unable to do so, perhaps due in part to the fact that a circuit court judge is not involved in the ATR process. App. B, W. Va. R.App. Pro. Moreover, while we normally do not undertake to discharge responsibilities properly belonging to the parties, because of the allegations against Judge Vickers, as well as the fact that this case involves two minor children and parents who were unable to afford counsel, we took the unusual step of obtaining a transcript on our own.

3. The DHHR's procedure is to accept reports regarding abuse and/or neglect of children and to investigate those reports. Child Protective Services cannot act until a report is made. The purpose of required reporting is to identify suspected abused and neglected children as soon as possible so that they may be protected from further harm. West Virginia law provides immunity to those who report, therefore, the majority of reports are anonymous.

4. The Mothers Program is a comprehensive substance abuse treatment program designed to meet the needs of women who abuse or are addicted to alcohol or other drugs.

5. F.M.R.S. Health Services, Inc. is a not-for-profit organization whose purpose is to provide quality behavioral healthcare to the residents of southern West Virginia.

ing that both Pamela G. and Gordon G. II were highly intoxicated. When the police and the DHHR employees arrived at Pamela G. and Gordon G. II's home, Pamela G.'s Blood Alcohol Content (BAC) was 0.199%. Moreover, according to the DHHR, the father asked Officer Prince for his gun and said that he wished he were dead. During the entire incident, both children were in the home; no other adults were present. Thereafter, the DHHR removed the children from the home and placed them in the care of their maternal aunt, Sherry W., who made arrangements on May 5, 2003 to transfer the children into the care of the maternal grandparents. Nevertheless, Pamela G. picked the children up from school on May 6, 2003, transferring the physical custody back to Pamela G. and Gordon G. II.

After Pamela G. retrieved her children, the DHHR tried to make contact with the parents but were denied entry into the residence. As a result, the DHHR filed a petition and an amended petition for abuse and neglect in the Circuit Court of Fayette County. At the preliminary hearing, testimony was taken regarding the DHHR's allegations and then the circuit court dismissed the petition for insufficient evidence. This appeal followed seeking reversal of the circuit court's dismissal.

## II.

### STANDARD OF REVIEW

This Court recently stated that, "[f]or appeals resulting from abuse and neglect proceedings, such as the case *sub judice,* we employ a compound standard of review: conclusions of law are subject to a *de novo* review, while findings of fact are weighed against a clearly erroneous standard." *In re Emily,* 208 W.Va. 325, 332, 540 S.E.2d 542, 549 (2000). Also in Syllabus Point 1 of *In the Interest of: Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996), this court held that:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and

shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

In this case, we are faced with determining if the DHHR was wrongly denied a full and fair hearing in the circuit court due, in part, to the alleged denial of the testimony of a key witness. In Syllabus Point 9 of *Tudor v. Charleston Area Medical Center, Inc.,* this court provided that " '[t]he West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admission of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard.' Syl. Pt. 1, in part, *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995)." With these standards in mind, we now consider whether the circuit court erred in this case.

## III.

### DISCUSSION

The sole issue in this case is whether the circuit court erred by dismissing the abuse and neglect petition filed against Gordon G. II and Pamela G. The DHHR argues that the dismissal order was improper because the circuit court did not allow it a full and fair hearing. Specifically, the DHHR declares that it was denied a meaningful opportunity to introduce as substantive evidence the testimony of "an imperative witness," Officer Prince of the Oak Hill Police Department. Having carefully reviewed the

record, we reverse the July 9, 2003 order of the circuit court.

In support of its argument, the DHHR relies upon this Court's holding in *In the Matter of George Glen B., Jr.*, 205 W.Va. 435, 444, 518 S.E.2d 863, 872 (1999), where we stated:

> The parties to an abuse and neglect proceeding must be given a meaningful opportunity to introduce substantive evidence in support of their respective positions, before a circuit court makes its final dispositional decision, and the guiding force behind such decision must be what was in the best interests of the child.

In that case, we found that the circuit court erred in dismissing the abuse and neglect petition "without first allowing the development of evidence regarding the prior terminations at issue and whether the parents had taken steps to remedy the circumstances which caused their ability to parent to be so deficient as to have had their rights to prior children permanently terminated." [6]

In this case, prior to receiving the transcripts of the June 26, 2004 hearing, we were left with the DHHR's compelling allegation in its brief before this Court that,

> In the instant case, the Fayette County Circuit Court failed to give the DHHR a meaningful opportunity to introduce substantive evidence by failing to allow an imperative witness to testify, the police officer [Officer Prince] who tested whether the respondent parents were intoxicated. Clearly, the Circuit Court erred by subsequently dismissing the petition based on insufficient evidence.

Upon reviewing the transcript of the hearing, we initially find fault with the DHHR's argument that Officer Prince was not *allowed* to testify.[7] To this end, it is clear to us from the following excerpt of the June 26, 2003 hearing, that Officer Prince would have been permitted to testify by the circuit court if the assistant prosecuting attorney had not decided to "forego calling him as a witness."

MR. CILIBERTI: The only reason why I'd hoped to call Officer Prince is because there is certain testimony that was not elicited regarding this incident from Officer Whisman. A preliminary breath test was administered. There's also an issue regarding suicide.

THE COURT: I've asked you, and I'm not going to ask you a third time. What's the relevancy of Officer Prince's testimony going to be other than intoxication, which is not being tested—challenged? And what does depression have to do with this father? Let's just say he admits he's got depression. People come in all the time—do you have a standard there that, if you suffer from depression, you lose your children?

MR. CILIBERTI: No, Your Honor. But, I believe a reasonable inference to be drawn is that, if you have an alcohol and depression problem to the extent that Mr. [G.] does, that problem does not simply just disappear. It requires treatment.

THE COURT: I don't take issue with that. If this officer can testify about it over a continuous period of time, fine. If he's talking about one instance, and I go back to that April 29, 2003, I don't necessarily think it's relevant. *If you do, put him on.* It would be easier to put him on and listen to his testimony than keep trying to get from you what you're doing. *But go ahead, if that's what you think you need to do.*

MR. CILIBERTI: *Your Honor, Officer Prince would testify simply about the events on April 29th and, based on the Court's questioning, I would forego calling him as a witness.*

Nonetheless, while we believe that the circuit court would have permitted the officer to testify, had the assistant prosecuting attorney not decided to forego such testimony, we

---

**6.** Rule 22 of the West Virginia Rules of Procedure for Child Abuse and Neglect provides:

If at the time the petition was filed, the court placed or continued the child in the emergency custody of the Department or a responsible person, a preliminary hearing on emergency custody shall be initiated within ten (10) days after the continuation of transfer of custody is ordered as required by W. Va.Code § 49–6–3(a).

**7.** *See* footnote 1.

at the same time recognize that the circuit court did not provide the DHHR a preliminary hearing in which all parties were afforded "a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." West Virginia Code § 49–6–2(c) provides:

> In any proceeding pursuant to the provisions of this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. The petition shall not be taken as confessed. A transcript or recording shall be made of all proceedings unless waived by all parties to the proceeding. The rules of evidence shall apply. Where relevant, the court shall consider the efforts of the state department to remedy the alleged circumstances. At the conclusion of the hearing the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected, which shall be incorporated into the order of the court. The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof.

During the hearing, the circuit court heard testimony that the parents were driving while intoxicated with the children in the vehicle, that both parents admitted to having alcohol problems, that the mother burned herself so badly while intoxicated that she had to be hospitalized, and that both parents failed to participate in substance abuse treatment services in which they had previously been enrolled. Furthermore, the officer who did testify at the hearing stated he observed that after being called to the parent's residence on at least twenty occasions that, "[m]ost of the time, they [were] pretty well intoxicated, to the point that sometimes [Gordon G. II] is threatening suicide. Probably 90 percent of the time that you're down there that he threatens to kill himself or wishes to do himself harm."

■ Even with such testimony concerning the parents irresponsible behavior, the circuit court still made it clear to the DHHR that it did not see the relevancy of additional testimony on the subject of depression or alcohol related problems of the parents. Thus, we believe that the circuit court was premature in dismissing the petition. We further believe from our review of the transcripts that both parents have problems that require substance intervention treatment. Moreover, the DHHR, the GAL, and even the parents themselves admit that they need assistance with their problems. In fact, the circuit judge stated that "I think the Court can make a finding of fact these people are crying out for help, they want help from the [DHHR]." As such, we also find that the circuit court erred in believing that it had *only* the authority to grant or deny the petition against the parents. Indeed our review of the transcripts provides that the circuit judge stated:

> But I'm trying to find a—whether there's probable cause to continue this abuse and neglect petition against these children. That's the allegation in the petition, not the rehabilitation necessarily at this stage of Mr. and Mrs. [G.]. I don't take issue with the fact that that's what you're trying to achieve, but that's not what I'm supposed to be trying to look at.

To this end, West Virginia Code § 49–6–12(a), makes accommodations for intermediate steps that can be taken, short of completely dismissing an abuse and neglect petition. W.Va.Code § 49–6–12(a) provides:

> (a) A court may grant a respondent an improvement period of a period not to exceed three months prior to making a finding that a child is abused or neglected pursuant to section two of this article only when:
>
> (1) The respondent files a written motion requesting the improvement period;
>
> (2) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period;
>
> (3) In the order granting the improvement period, the court (A) orders that a hearing be held to review the matter within sixty days of the granting of the im-

provement period, or (B) orders that a hearing be held to review the matter within ninety days of the granting of the improvement period and that the department submit a report as to the respondents progress in the improvement period within sixty days of the order granting the improvement period; and

(4) The order granting the improvement period requires the department to prepare and submit to the court an individualized family case plan in accordance with the provisions of section three, article six-d of this chapter....

*See also* Rule 23 of the Rules of Procedure for Child Abuse and Neglect Proceedings ("at any time prior to the final adjudicatory hearing, including at the preliminary hearing or emergency custody proceedings, a respondent may move for a preadjudicatory improvement period....").[8] Moreover, in Syllabus Point 5 of *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001), we held that:

Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

▮▮▮▮ Given the aforementioned facts, we believe it is necessary to remand this case for a new hearing. Upon remand, the circuit court should advise the parents of their right to request an improvement period as provided by W.Va.Code § 49–6–12(a)(1).[9] Additionally, by the fact that Gordon G. II on

**8.** The Rules of Procedure for Child Abuse and Neglect Proceedings were adopted by order of this Court on December 5, 1996, and became effective on January 1, 1997.

**9.** The parents appeared *pro se* and we recognize that *pro se* pleadings and motions are held to less stringent standards than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.). In Syllabus Point 1 of *Blair v. Maynard*, 174 W.Va. 247, 324 S.E.2d 391 (1984), we articulated the constitutional right of self-representation in civil cases: "Under West Virginia Constitution art. III, § 17, the

numerous occasions has stated that he has considered suicide, we are concerned that a substance abuse program may not be a sufficiently comprehensive approach to the problems that are evident from the testimony adduced at the hearing.[10] Equally important, given the fact that both parents have missed substance abuse meetings in the past, the circuit court should have kept the petition open to monitor the participation of the parents. We therefore agree that it is in the best interest of the children that this case be remanded for a new hearing.

### IV.

### CONCLUSION

For the reasons stated above, we reverse the final order of the Circuit Court of Fayette County entered on July 9, 2003, and remand for further proceedings consistent with this opinion.

Reversed and Remanded.

Justice DAVIS concurs and reserves the right to file a concurring opinion.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

Justice ALBRIGHT dissents and reserves the right to file a dissenting opinion.

STARCHER, J., dissenting.

The DHHR came before this Court asserting two allegations of error: (1) that the circuit judge denied the DHHR's request for transcripts, and (2) that the DHHR was denied the right to call a law enforcement witness.

As the majority opinion ably demonstrates, both of the DHHR's allegations of error are false.

right of self-representation in civil proceedings is a fundamental right which cannot be arbitrarily or unreasonably denied." We also recognized in *Blair* that protection of this right requires the trial court to make "reasonable accommodations" to assist the *pro se* litigant in negotiating the labyrinth of legal proceedings.

**10.** We also think the circuit court, the DHHR, and Mr. G. should seriously consider counseling to diagnose any psychological conditions from which Mr. G. might suffer and to take appropriate treatment steps if any such conditions are discovered.

The majority, "sensing" that the DHHR may have a point—despite their failure to prove any of their alleged errors—has reinstated the abuse and neglect case.

The DHHR would have had the right to file a new petition, if they had evidence showing current abuse and neglect. The DHHR does not have the right to prevail before this Court on the basis of false assertions of trial court error.

Accordingly, I dissent. I am authorized to say that Justice Albright joins in this dissent.