# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Stephen F. DuBois, on behalf of the
Estate of Katherine A. Forman,
Plaintiff Below, Petitioner**

**vs)  No. 15-1099**  (Preston County 14-C-139)

**James B. Nutter & Company and
Metrocities Mortgage, LLC,
Defendants Below, Respondents**

**FILED**

**June 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Stephen F. DuBois, on behalf of the Estate of Katherine A. Forman, by counsel Avrum Levicoff and Jordan C. Hettrich, appeals the October 8, 2015, order that granted summary judgment in favor of Respondent James B. Nutter & Co. ("JBN") allowing it to go forward with the foreclosure on certain property that was subject to a reverse mortgage held by JBN at the time of petitioner's mother's death. JBN, by counsel Jason S. Murphy and James M. Evans, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to August 11, 2005, the subject property, now known as 871 Alpine Lake Road, Terra Alta, West Virginia,[1] was owned by Katherine A. Forman, petitioner's mother. On August 11, 2005, Ms. Forman conveyed the subject property to petitioner. This deed was recorded in the Office of the Clerk of the County Commission of Preston County, in Deed Book 659, at page 450.

In 2008, at a time when Ms. Forman, who was elderly, was in failing health and required a substantial amount of medical care and attention, she (as "borrower") and petitioner (as "co-borrower") applied for a "reverse mortgage"[2] from Financial Freedom Senior Funding

---

[1]The subject property was formerly known as Rt. 3, Box 170, Terra Alta, West Virginia.

[2]A "reverse mortgage" is defined by The West Virginia Mortgage Enabling Act as "a nonrecourse loan secured by real property which: (1) Provides cash advances to a borrower (continued . . .)

1

Corporation. On December 5, 2008, petitioner conveyed the subject property back to Ms. Forman because, he claims, he was advised that "the property had to be titled in the name of the 'primary borrower' to make the reverse mortgage." This deed is recorded in the Office of the Clerk of the County Commission of Preston County in Deed Book 700, at page 723.

On January 7, 2009, Ms. Forman, as the sole owner of the subject property, signed an "Adjustable Rate Note (Home Equity Conversion)" as the sole borrower. The lender was Metrocities Mortgage LLC doing business as Fidelity and Trust Mortgage. Also on that date, Ms. Forman signed, as the sole borrower, a "Deed of Trust (Home Equity Conversion)." The Deed of Trust was recorded in the Office of the Clerk of the County Commission of Preston County in Deed Book 464, at page 545.

Paragraph 9 of the Deed of Trust[3] provides:

Grounds for Acceleration of Debt.

(a) Due and Payable. Lender may require immediate payment in full of all sums secured by this Security instrument if:

   (i)    A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

   (ii)   All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or a beneficial interest in a trust with such an interest in the Property), or (c) a life estate in the Property.

   . . . .

(d) Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice of either:

---

based on the equity in a borrower's owner-occupied principal residence; (2) Requires no payment of principal or interest until the entire loan becomes due and payable . . . ." W.Va. Code § 47-24-3, in part.

[3]The Adjustable Rate Note included language similar to that of paragraph 9 of the Deed Trust.

(i)   Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii)  Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv)  Provide the Lender with a deed in lieu of foreclosure.

It is undisputed that, upon execution of the Adjustable Rate Note and Deed of Trust, Ms. Forman received an initial advance of $168,859.47. Approximately $70,000 of this amount was used to satisfy and release an existing loan and mortgage. The remainder was thereafter used to help with Ms. Forman's medical and other healthcare costs. The Deed of Trust was immediately assigned to JBN.

On or about August 8, 2009, Ms. Foreman executed a "Revocable Living Trust" that purported to establish a trust in which the corpus was to be the subject property and that named petitioner as the sole trustee and sole beneficiary.

Ms. Forman died on September 23, 2009, in Arizona. JBN received notice of Ms. Forman's death and, thereafter, by letter dated December 23, 2009, entitled "Repayment Notice," notified Ms. Forman's estate that the debt incurred under the reverse mortgage must be repaid. The certified mail receipt reflects that petitioner signed for this notice; petitioner does not dispute that he received this notice. The letter acknowledged Ms. Forman's death and also recounted paragraph 9(d) of the Deed of Trust, stating that either (1) the debt must be paid in full, (2) that the property must be sold for the lesser of the debt or 95% of the appraised value, or (3) that good marketable title to the property must be deeded to the lender. Also consistent with paragraph 9(d), the letter stated that "[t]he borrower or the borrower's estate is required to request an appraisal, at his or her own cost[,]" and that, if JBN is not notified that one of these actions is being taken within thirty days, the lender will initiate foreclosure. It is undisputed that petitioner never notified JBN that one of the enumerated actions took place within thirty days.

A second letter addressed to Ms. Forman's estate at the subject property was dated January 26, 2010, and was signed for by petitioner. It was entitled "Reminder" and requested an update on the estate's attempts to either sell the property or pay off the loan.

A third letter, dated July 21, 2010, and entitled "Notice of Intention to Foreclose," was sent to Ms. Forman's estate at the subject property and signed for by petitioner. The letter requested that the loan either be paid off or that the keys to the property be sent to JBN along with a letter explaining that the property had been vacated and that foreclosure could proceed.

Ultimately, petitioner, as an interested party, received a "Notice of Trustees' Sale" advising him that a public sale of the subject property would be made at the Preston County Courthouse on August 4, 2014.

After receiving notice of the trustees' sale and before the sale, petitioner, pro se, filed a "Memorandum in Support of Motion for Preliminary/Temporary Injunction" against JBN and

Metrocities Mortgage, LLC,[4] among others. Petitioner alleged, in part, that

> [I] [h]ad returned home and received monthly not yearly occupancy documents which I filled out noting I was and am the Trustee, as well as calling JBN [the Defendant] on receipt of the document. Was notified by insurance supervisor Joyce Smith retired, that JBN [the Defendant] was force placing insurance and my [N]ationwide policy would be canceled. I called Joyce Smith back and she related I can acquire my own insurance again as the Trustee of my mother's estate only by reimbursing JBN for all moneys spent on the forced placed policy which was close to fifteen thousand dollars, which I did not have. My [N]ationwide policy for full coverage was a little over $1700 a year with $380,000 total coverage.
>
> I asked Joyce Smith if there was someone with HUD I could speak with regarding this matter and she very sternly said I am HUD and hung up on me.

Petitioner further alleged that, as a result of Super Storm Sandy, the subject property, which originally appraised at $240,000, was now twice appraised for $35,000; that petitioner attempted to file a claim with JBN's insurance department but was rebuked by Joyce Smith, who stated that petitioner has "more pressing issues and [she] wouldn't take a claim saying I needed to speak with Joanny Bier in foreclosure"; and that petitioner contacted Ms. Bier, who, like Ms. Smith, stated that "we have issues I'll be back in touch." Petitioner alleged that he was never contacted by JBN and that he personally acquired estimates on rebuilding the severely damaged home. He identified Al Pitzner of JBN as one who "has sent me the most derogatory communications making claim that I took advantage of my 84 yr. old mother and in essence fleece[d] her of all the loan proceeds for my own personal gain . . . ."

The parties thereafter agreed to stay the previously scheduled August 4, 2014, foreclosure sale pending resolution of the instant lawsuit. Discovery ensued.

On August 10, 2015, JBN filed a "Motion for Summary Judgment, or, in the Alternative, for Judgment by Default," in which it argued that it had the right to foreclose on the subject property under paragraph 9(a)(i) of the Deed of Trust, which provides for acceleration of the debt if "[a] Borrower dies . . . ." Petitioner filed a response, pro se, countering that he was surreptitiously and, therefore, fraudulently removed as a co-borrower on the Deed of Trust and further, that, while it is "partially true" that his mother's death constituted grounds for acceleration of the debt, petitioner should be afforded the option to purchase the subject property for 95% of the appraised value in order to extinguish the secured interest therein.

---

[4]In the order now on appeal, the circuit court found that Metrocities Mortgage, LLC, was never served with petitioner's "Memorandum in Support of Motion for Preliminary/Temporary Injunction." Petitioner does not dispute this fact; in fact, in his response in opposition to JBN's motion to dismiss this appeal, *infra*, petitioner states that "Metrocities was dismissed from the case." Thus, petitioner's assignment of error that the circuit court erred in dismissing the case in its entirety without addressing his claims against Metrocities Mortgage is waived.

A hearing on the motion was held on September 23, 2015. On October 8, 2015, the circuit court entered an order granting JBN's motion for summary judgment, denying petitioner's request for injunctive relief, and permitting JBN to move forward with foreclosure of the subject property.[5] Petitioner retained counsel and timely filed a notice of appeal with this Court.

On February 4, 2016, the parties filed a "Joint Motion to Hold Consideration of Case in Abeyance Pending Potential Settlement." This Court entered an order granting the motion. In compliance therewith and with subsequent orders staying the proceedings and/or extending the deadlines pending resolution of the issues by way of a settlement agreement, the parties submitted periodic status reports.[6] By order entered on September 19, 2017, this case was restored to the active docket of this Court.[7]

We review petitioner's appeal of the circuit court's summary judgment order de novo. *See* Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994). (holding that "[a] circuit court's entry of summary judgment is reviewed *de novo.*"). Under Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment should be granted "where the moving party shows by 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 59, 459 S.E.2d 329, 336 (1995) (footnote omitted).

Petitioner's first two assignments of error are related and will be addressed together. Petitioner argues that the circuit court erred in granting summary judgment in favor of JBN without adjudicating his claims that JBN violated certain provisions of the West Virginia Consumer Credit and Protection Act ("WVCCPA") and the West Virginia Residential Mortgage Lender, Broker and Servicer Act ("Mortgage Servicer Act"). In particular, petitioner contends that his pro se complaint, while lacking "some degree of specificity" sufficiently alleged claims that demonstrated a violation of West Virginia Code §§ 46A-3-109(a)(2), -109(b)(1), and -109(b)(4)[8] and West Virginia Code § 31-17-8.[9] Additionally, petitioner argues that his complaint

---

[5]The circuit court also concluded that petitioner failed to present sufficient evidence of fraud on the part of JBN. Petitioner does not appeal this ruling.

[6]On September 26, 2016, the parties entered into a Settlement Agreement and Release. Petitioner subsequently filed a new complaint in the Circuit Court of Preston County alleging, inter alia, that JBN breached the settlement agreement. According to petitioner, that complaint is now pending.

[7]On November 2, 2017, JBN filed a motion to dismiss this appeal and memorandum in support thereof. In light of this Court's ruling affirming the circuit court's summary judgment order, the motion is denied.

[8]West Virginia Code §§ 46A-3-109(a)(2), -109(b)(1), and -109(b)(4) provide:
(continued . . .)

5

(a) In addition to the sales finance charge or loan finance charge permitted by this chapter, a creditor may contract for and receive the following additional charges in connection with a consumer credit sale or a consumer loan:

. . . .

(2) Charges for insurance as described in subsection (b) of this section: Provided, That nothing contained in this section with respect to insurance in any way limits the power and jurisdiction of the Insurance Commissioner of this state in the premises;

. . . .

(b) A creditor may take, obtain or provide reasonable insurance on the life and earning capacity of any consumer obligated on the consumer credit sale or consumer loan, reasonable insurance on any real or personal property offered as security subject to the provisions of this subsection and section one hundred nine-a [§ 17A-6-109a] of this article and vendor's or creditor's single interest insurance with respect to which the insurer has no right of subrogation. Only one policy of life insurance and/or one policy of health and accident insurance and/or one policy of accident insurance and/or one policy of loss of income insurance on any one consumer may be in force with respect to any one contract or agreement at any one time, but one policy may cover both a consumer and his or her spouse:

. . . .

(1) The amount, terms and conditions of property insurance shall have a reasonable relation to the existing hazards or risk of loss, damage or destruction and be reasonable in relation to the character and value of the property insured or to be insured; and the term of the insurance shall be reasonable in relation to the terms of credit: Provided, That nothing may prohibit the consumer from obtaining, at his or her option, greater coverages for longer periods of time if he or she so desires;

. . . .

(4) With respect to insurance against loss of or damage to property or against liability, the creditor shall furnish a clear and specific statement in writing to the debtor setting forth the cost of the insurance if obtained from or through the creditor and stating that the debtor may choose the person through whom the insurance is to be obtained[.]

[9]West Virginia Code § 31-17-8 relates to, among other things, the maximum interest rate (continued . . .)

sufficiently alleged violations of West Virginia Code § 46A-2-115 (relating to limitations on the amount lenders can charge in the event of default), § 46A-2-127 (relating to fraudulent, deceptive or misleading representations), § 46A-2-128 (relating to unfair or unconscionable collection practices), and § 46A-6-104 (relating to unlawful acts or practices). According to petitioner, the circuit court erred in granting summary judgment without adjudicating these claims.

We find no error. In its October 8, 2015, order, the circuit court stated that it construed petitioner's initial pleading as the complaint in this matter and as a request for a permanent injunction, specifically recognizing petitioner's request for "equitable relief to stop illegal charges and foreclosures resulting therefrom." The court noted that the parties engaged in "contentious" discovery and "have been before this Court several times on motions to compel." The circuit court determined that, "[t]o the extent that [petitioner] has sought relief from foreclosure due to the charging of illegal fees, he has failed to present any evidence regarding illegal fees or otherwise attempted to develop that theory[,]" and further, that petitioner failed to present evidence or identify witnesses in support of his claims.

On appeal, petitioner presents only general and conclusory arguments in support of his claim that JBN violated the WVCCPA and the Mortgage Servicer Act. Petitioner simply states that he alleged claims "arising out of JBN's conduct in force placing insurance on the subject property at a rate well beyond that which [petitioner] would have paid under his own policy[,]" and JBN's "refus[a]l to permit [petitioner] to acquire his own property insurance if all costs for the force-placed insurance were reimbursed." Petitioner also fails to argue that he presented evidence below in support of such claims and otherwise fails to argue or point to any evidence in the record on appeal in an effort to persuade this Court that the circuit court erred in granting JBN's motion for summary judgment. Thus, we conclude that the circuit court properly adjudicated all of petitioner's claims.

Next, petitioner argues that he had the right to purchase the subject property for 95% of its appraised value, as provided for in paragraph 9(d) of the Deed of Trust. It is undisputed that, following his mother's death, petitioner received the December 23, 2009, "Repayment Notice" that, consistent with paragraph 9(d), advised that "[t]he debt must be paid in full; or the property must be sold for the lesser of the debt or 95% of the appraisal value[,]" and that "[i]f we [JBN] are not notified that one of the[se] actions . . . are being taken within 30 days, foreclosure will be initiated by the lender . . . ." Thus, even though the notice was addressed to Ms. Forman's estate, petitioner, her sole surviving heir, does not dispute that he received actual notice of JBN's efforts to accelerate the debt incurred as a result of the reverse mortgage and that one of the options was that the property be sold for 95% of the appraised value. Despite being directly advised of this option, petitioner failed to act thereby waiving any right he may have had to purchase the property for 95% of the appraised value. "'To effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right.'" Syl. Pt. 1, in part, *Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998) (quoting Syl. Pt. 2, in part, *Ara v. Erie Ins. Co.*, 182 W. Va. 266, 387 S.E.2d 320 (1989)). Though petitioner argues that

allowable on subordinate loans.

JBN suffered no prejudice as a result of his failure to comply with the thirty-day requirement, "[t]here is no requirement of prejudice or detrimental reliance by the party asserting waiver." *Potesta*, 202 W. Va. at 309, 504 S.E.2d at 136.[10] Thus, we find that the circuit court did not err in granting summary judgment in favor of JBN on this issue.[11]

Finally, we address petitioner's argument that the circuit court erred in granting summary judgment in favor of JBN without affording petitioner the typical latitude traditionally afforded to pro se litigants. Petitioner argues that pro se pleadings should be held to a less stringent standard than those drafted by lawyers. *See In re: Gordon G., III*, 216 W. Va. 33, 39 n.9, 602 S.E.2d 476, 482 n.9 (2004). Petitioner further argues that circuit courts should examine statements in a complaint in a manner that disfavors dismissal. *See Bowden v. Monroe Cty. Comm'n*, 232 W. Va. 47, 750 S.E.2d 263 (2013). Finally, petitioner argues that the circuit court should have, sua sponte, granted leave to amend so as to afford petitioner an opportunity to better articulate his claims because "[w]hen a litigant chooses to represent himself, it is the duty of the trial court to insure fairness, allowing reasonable accommodations for the pro se litigant so long as no harm is done an adverse party." *Bego v. Bego*, 177 W. Va. 74, 76, 350 S.E.2d 701, 703 (1986).

We find petitioner's argument to be without merit. A review of petitioner's initial pleading and subsequent court filings does not suggest a litigant who is entirely unsophisticated

---

[10]Petitioner argues that the circuit court should have concluded that JBN waived the thirty-day requirement because, after it sent the December 23, 2009, "Repayment Notice" that included the thirty-day time period in which to exercise one of the options set forth therein, JBN sent a subsequent letter requesting an update on whether the property was being sold or paid off and another letter stating that the loan must be paid in full or the keys to the subject property sent to JBN. Petitioner fails to address or otherwise acknowledge that the Deed of Trust includes a provision entitled "Forbearance by Lender Not a Waiver" that states that "[a]ny forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy." Therefore, this argument is without merit.

[11]In related assignments of error, petitioner argues that the circuit court erred in failing to conclude that paragraph 9(d) is ambiguous and should apply in the event of the death of the borrower. Petitioner also argues that, in any event, the circuit court should have concluded that paragraph 9(d) applies in this case based upon the court's finding that the August 8, 2009, "Revocable Living Trust" "failed to establish a trust because the sole trustee cannot be the sole beneficiary." According to the circuit court, "'[w]here the sole beneficiary is selected by the instrument purporting to create a trust as the sole trustee, such trustee becomes the owner of the property free of the trust, and the attempt to create the trust is considered as failed.' 76 Am. Jur. 2d Trusts 209 (2005)." (Footnote omitted). *See also* W.Va. Code § 44D-4-402(a)(5) ("Except as created by an order of the court, a trust is created only if: . . . [t]he same person is not the sole trustee and sole beneficiary."). Petitioner argues that this effective transfer of the subject property to him, and not Ms. Forman's death, triggered the acceleration of the loan balance such that, under paragraph 9(d), he had the right to purchase the property for 95% of its appraised value. Given our holding that petitioner waived the right to purchase the subject property for 95% of the appraised value, we need not address these assignments of error.

8

or unknowledgeable. Petitioner participated in close to a year of discovery, including motions to compel, and had sufficient opportunity to present evidence in support of his claims. The circuit court liberally construed petitioner's initial pleading as the complaint in this matter and as a request for a permanent injunction. While this Court has recognized that "[c]ases should be decided on the merits, and to that end, justice is served by reasonably accommodating all parties, whether represented by counsel or not[,]" we have also cautioned that the court must not overlook the rules to the prejudice of any party and, "ultimately, the *pro se* litigant must bear the responsibility and accept the consequences of any mistakes and errors." *Blair v. Maynard*, 174 W. Va. 247, 253, 324 S.E.2d 391, 396 (1984). In response to JBN's properly supported motion for summary judgment and evidence that there was no genuine issue of material fact, we find that petitioner failed to carry his burden of either rehabilitating the evidence attacked by JBN, producing additional evidence showing that a genuine issue for trial exists, or submitting an affidavit explaining why further discovery is necessary, as provided by Rule 56(f) of the West Virginia Rules of Civil Procedure. *See Williams,* 194 W. Va. at 56, 459 S.E.2d at 333, syl. pt. 3. Therefore, the circuit court properly granted summary judgment in favor of JBN.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 8, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis
Justice Menis E. Ketchum